IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 No. CR 10-2055 BB

ISAAC STEWART,

        Defendants.


MEMORANDUM OPINION
IN SUPPORT OF ORDER DENYING SUPPRESSION


THIS MATTER is before the Court on Defendant's Motion to Suppress Evidence [docs. 31, 32]. The Court held an evidentiary hearing on June 27, 2011, and the telephone calls to and from 911 and various photographs of the premises and guns were admitted into evidence. After a full review of the disc containing the 911 call and all submissions of counsel, the Court is convinced Tenth Circuit precedent requires denial of the motion. This opinion will encompass the Court's Findings of Facts and Conclusions of Law.

### *Facts*

Defendant Isaac Stewart lived in an apartment at 1104 Palomas Drive SE #3 in Albuquerque, New Mexico, on June 11, 2010. On the night of June 11, 2010, Mr. Stewart had a number of friends over to his apartment. Around 11 PM, when the events giving rise to this case occurred, Mr. Stewart and his friends were talking,

listening to loud music, and drinking alcohol.  One of his guests, Ms. Reanna Sillivan, became extremely intoxicated and obnoxious - yelling and screaming at her former boyfriend who was also a guest at the party.  Eventually, Mr. Stewart had enough of Ms. Sillivan and he asked her to leave.  When Ms. Sillivan stepped out of the front door, she fell to the concrete patio injuring her leg and ankle.  In her intoxicated state, Ms. Sillivan began wailing and screaming at the top of her voice "it hurts." Despite the efforts of her former boyfriend and other guests to calm her, Ms. Sillivan continued screaming about how much her leg and ankle hurt until Mr. Stewart brought her back into his apartment to lay down and hopefully calm down.

The apartment complex is small, consisting of eight small (approximately two bedroom) apartments arranged in a "U" shape with two buildings of three apartments facing each other across a parking lot and a third building of two apartments between the two and facing the street.  Mr. Stewart's apartment faced south toward the parking lot; the two-apartment building, containing apartment #5, was located approximately 15 to 20 feet from Mr. Stewart's apartment.  Because of Ms. Sillivan's loud wailing and cursing, the residents of apartment #5 became very concerned about the disturbance and called the 911 Albuquerque Police hotline.  The 911 dispatcher ascertained the screaming had been ongoing inside the apartment for approximately one-half hour and kept the callers on the phone until they reported seeing the police at the complex gate.

It was approximately 11:20 PM when officers of the Albuquerque Police Department ("APD") arrived at Mr. Stewart's apartment.  APD Officers Phillip Moya,

2

Marcia Benavides, and Robert Clipp walked up to Mr. Stewart's wrought iron outer door and tried to get his attention loudly announcing "Police."  The front door of the apartment opened into a small patio enclosed from the apartment complex parking lot by the wall of the adjacent apartment and a wrought iron security gate equipped with both a doorknob with lock and a separate key-controlled deadbolt lock.  At the time the police arrived, the deadbolt of the wrought iron security door was unlocked, but the doorknob lock was engaged.

Due to the loud music inside the apartment, it was some time before Mr. Stewart, responding to a knock by one of the officers on his apartment window, walked out of his apartment, crossed the patio, and walked up to the wrought iron door to ask what the officers wanted.  As he approached the gate, he was carrying a crying child and the officers observed he was sweating and breathing hard.  Standing outside the wrought iron door, the police officers explained they had received a 911 call and asked Mr. Stewart if they could come inside his apartment because they had a report of someone who needed help.  Mr. Stewart refused to allow the officers inside and told them that nothing was wrong.  Officer Moya, using his fingers, manipulated the door lock mechanism and pushed the gate open.

Upon entering the courtyard, Officer Clipp conducted a pat-down search of Defendant. As Defendant continued to act aggressively, he was then placed in handcuffs.  Officers Moya and Benavides then knocked on the door of the apartment several times while loudly announcing their presence.  Through a window, the police

3

viewed a woman lying on a couch, but she did not acknowledge the police.  The loud music continued and a while later a woman, who identified herself as Christine Teran, unlocked the door and opened it.  Ms. Teran then went and sat on the couch where another woman, later identified as Stephany Imbuado, was sitting.  Ms. Teran left the apartment door open.  Officers Moya and Benavides entered the apartment to conduct a welfare check while Officer Clipp remained outside of the apartment with Defendant. The officers continued to announce their presence in an attempt to locate the screaming woman.

When Officer Moya entered the bedroom identified as Defendant's, he saw what appears from the photo exhibits to be an approximately six-foot tall closet lacking doors.  Officer Moya approached the closet to ensure that no one was hiding inside and saw, in plain view, two black, pump-action shotguns which he believed had been altered with pistol grips and shortened barrels.

As soon as the shotguns were observed, the officers cleared the apartment and had all of the occupants go outside.  Officer Moya called APD Detective Danny Garcia, who is also a Task Force Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  After viewing the shotguns in the closet, Detective Garcia sought and was granted a search warrant from United States Magistrate Judge Don Svet. Upon execution of the search warrant, the police found a weapon made from a Remington, model 870 12-gauge shotgun, and a Mossberg, model 500A 12-gauge shotgun, in Defendant's bedroom closet; a Glock, model 31, .357 caliber pistol, found

under the couch in the living room; and correspondence and utility bills addressed to Defendant. ATF Agent Matthew Pound subsequently examined the shotguns and found that the weapon made from the Remington shotgun had a barrel length of approximately 13.5 inches and an overall length of approximately 23 inches, which would require federal registration.

### *Legal Discussion*

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. CONST. amend. IV. A search conducted without a warrant and without probable cause is unreasonable unless one of the recognized exceptions to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception, and that relied on here, is the existence of "exigent circumstances." *Payton v. New York*, 445 U.S. 573, 590 (1980). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

In such an emergency situation, officers do not need probable cause. *Armijo v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010). Such an exigency exists when "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *Armijo*, 601 F.3d at 1070 (quoting *United States v. Najar*, 451

F.3d 710, 718 (10th Cir. 2006)).  Although a claim of exigent circumstances must have some factual support, "[r]easonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard." *United States v. Porter*, 594 F.3d 1251, 1258 (10th Cir. 2010) (citing *Najar*, 451 F.3d at 718); *Armijo*, 601 F.3d at 1071-72; *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004).  "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Porter*, 594 F.3d at 1258 (quoting *Michigan v. Fisher*, 130 S. Ct. 546, 549 (2009)).  Moreover, in applying this exception to the warrant requirement, the circumstances must be evaluated "as they would have appeared to prudent, cautious, and trained officers."  *Armijo*, 601 F.3d at 1071 (citation omitted).

The Tenth Circuit affirmed rejection of a motion to suppress on virtually identical facts in *United States v. Najar*.  In that case, the Roswell 911 operator received a call but could hear nothing.  When he attempted to return the call, the phone was answered but hung up immediately.  Officers were dispatched.  When they arrived, they announced themselves and their purpose.  They could see someone inside but he would not answer the door.  Eventually, Richard Najar answered, said he was the only one in the mobile home, and denied making the calls.  Concerned someone inside may be injured, the officers entered over Najar's objection.  451 F.3d at 712.  An uninjured woman was found along with a shotgun the officers found leaning against the wall.  They seized the gun and Defendant Najar was charged with being a felon in possession.  Judge Browning initially suppressed the gun, but on reconsideration denied the motion.

*United States v. Najar*, 2004 WL 3426123 (D.N.M. 2004).  Writing for the Court of Appeals, Judge O'Brien initially recognized that "911 calls are the predominant means of communicating emergency situations."  451 F.3d at 719 (quoting *United States v. Holloway*, 290 F.3d 1331, 1339 (11th Cir. 2002)).  The Circuit also noted that while Najar claimed he had explanations for the repeated calls and was initially cooperative when he answered the door, the police had good reason to believe he was lying and remain suspicious.  451 F.3d at 720.  Judge O'Brien concluded, "Given the totality of the circumstances, the officers had reasonable grounds to believe someone inside the trailer may have been in need of emergency aid and immediate action was required." *Id*.  As to the scope of the search, the Court noted the police "did not attempt to search any place beyond the locations where a victim might likely be found."  *Id*.

All of the Tenth Circuit's legal conclusions apply to the present facts and *Najar* controls the outcome of the present motion, so it must be Denied.

BRUCE D. BLACK
Chief Judge